# EXHIBIT A



October 16, 2020

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Marshall Scott Bragg
Chief Executive Officer
Agent for Service of Process
Bragg Investment Company, Inc.
6251 Paramount Blvd
Long Beach, CA 90805

Owen Kupfer Jr.
General Manager
Bragg Crane Service
457 Parr Boulevard
Richmond, CA 94801

Marshall Scott Bragg
Chief Executive Officer
Agent for Service of Process
Bragg Investment Company, Inc.
6242 Paramount Blvd,
Long Beach, CA 90805

**RE:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL
WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§
1251 *et seq.*)**

Dear Mr. Bragg and Mr. Kupfer,

This firm represents The California Sportfishing Protection Association ("CSPA"),
a California non-profit public benefit conservation and research organization, in regard
to violations of the Clean Water Act ("CWA" or "the Act") occurring at the Bragg
Investment Company, Inc. industrial facility located at 457 Parr Boulevard, Richmond,
CA 94801, with Waste Discharger Identification Number WDID 2 07I002181 (the
"Facility"). The Facility primarily engages activities required to maintain mobile cranes
and rigging equipment and provide mobile crane-contractor services throughout
northern California. This letter is being sent to you as the responsible owners, officers,
and/or operators of the Facility. Unless otherwise noted, Bragg Investments, Inc., which
does business as Bragg Crane Service, shall hereinafter be referred to as "Bragg" and
Marshall Scott Bragg and Owen Kupfer as the Owners/Operators of the Facility.

CSPA is a non-profit public benefit conservation and research organization
dedicated to the preservation, protection, and defense of the environment, wildlife, and
natural resources throughout the state of California. Members of CSPA reside in the
communities nearby to San Pablo Bay (the "Receiving Waters" herein) into which Bragg
discharges polluted storm water.



As explained in detail below, Bragg continuously discharges pollutants into the Receiving Waters, in violation of the Clean Water Act and the Storm Water Permit. CSPA members use the Receiving Waters to boat, fish, kayak, bird watch, view wildlife, hike, bike, walk and engage other recreational activities. Additionally, CSPA members use the Receiving Waters to engage in scientific study through pollution and habitat monitoring to promote restoration activities. The unlawful discharge of pollutants from the Facility into the Receiving Waters impairs CSPA members' use and enjoyment of these waters. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Bragg's failure to comply with the Clean Water Act and the Storm Water Permit.

Bragg is in ongoing violation of the substantive and procedural requirements of the CWA, 33 U.S.C. § 1251 et seq.; and California's General Industrial Storm Water Permit, National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 Water Quality Order No. 2015-0057-DWQ as amended by Order No. 2015-0122-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General Permit" or "Permit").[1]

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4), each separate violation of the CWA occurring before November 2, 2015 commencing five years prior to the date of this Notice of Violation and Intent to File Suit subjects Bragg to a penalty of up to $37,500 per day; violations occurring after January 12, 2009 and $55,800.00 per day per violation for violations that occurred after November 2, 2015. In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) of the Act (33 U.S.C. §§ 1365(a), (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The CWA requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. 135.2.

As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CSPA intends to file suit under

---

[1] Bragg submitted its Notice of Intent to comply with the General Permit for the Facility on or about November 13, 2015.

CWA Notice of Intent to Sue
Bragg Investment Company, Inc.
October 16, 2020
Page 3 of 17



Section 505(a) of the Act (33 U.S.C. § 1365(a)) in federal court against Bragg for violations of the Act and the General Permit.

## I.    Background

### A.    The Clean Water Act

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a NPDES permit, is illegal. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers, as well as through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board Water Resource Control Board ("State Board") to issue individual and general NPDES permits in California. 33 U.S.C. § 1342. The Board coordinates with the Central Valley Regional Water Quality Control Board ("Regional Board"), which has shared jurisdiction over the Facility for state and federal water pollution control efforts.

### B.    California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing an NOI. General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.*



Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements. Beginning under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year[2] exceeds the annual NAL value for that parameter. An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH. General Permit XII.A.

### C.    Bragg's Industrial Facility

Bragg's Facility is located at 457 Parr Boulevard, Richmond, CA 94801, in Contra Costa County. The Facility houses Bragg Crane and Rigging Service engaging in all activities required to maintain mobile cranes and rigging equipment to provide crane and other construction equipment services throughout the northern California. Specifically, industrial activities at the Facility include equipment and vehicle storage, crane, rigging, vehicle and other construction equipment maintenance, setup, and staging, and fueling and fuel storage. The site consists of three parcels creating a flag lot. Access to the Facility is via Goodrick Avenue to the northwest and Parr Boulevard at the south. The Facility sits 3,000 feet southeast of the Pacific Ocean at San Pablo Bay and the property slopes slightly downward towards the northwest and San Pablo Bay.

Pursuant to the Facility's NOI the Facility encompasses approximately 8 acres, which is mostly exposed to storm water. Scheduled facility operating hours are Monday through Friday from 7:00 AM to 5:00 PM.

According to The Facility's NOI Bragg operates under Standard Industrial Classification (SIC) Code 9999, covering non-classifiable establishments, which includes establishments which cannot be classified in any other industry though establishments which can be classified in a division should be classified in the most appropriate industry within that division. Without guidance from the General Permit regarding required sampling parameters, Bragg samples and analyzes storm water for the three required for any permitted industrial facility under the Permit, total suspended solids ("TSS"), pH, oil and grease ("O&G"), and an industry-related parameter, iron ("Fe"). Given the machinery, vehicles, and metals stored outdoors on site, CSPA believes that Bragg should also be sampling for zinc and copper at a minimum.

---

[2] A reporting year under the General Permit is July 1 to June 30.



Facilities must also sample and analyze for additional parameters identified on a facility specific basis to reflect pollutant a source assessment, due to receiving water impairments, or as required by the Regional Board. General Permit, Section XI.B.6. Pursuant to Clean Water Act Section 303(d) list of impaired waterbodies, San Pablo Bay is impaired for chlordane, dieldrin, PCBs, selenium, mercury, DDT, dioxin-like PCBs, dioxin compounds, and furan compounds.

Industrial activities at the Facility are mostly conducted outside, without adequate cover, and are exposed to storm water. While some maintenance activities are conducted under cover, they are exposed to building openings such as doors, windows, and venting, allowing pollutants to escape where they are carried offsite by storm water or via aerial deposition.

Industrial activities occur throughout the Facility footprint. An office/maintenance building is in the southwest corner of the site adjacent to Parr Boulevard. Approximately eighty percent of the site is paved with unpaved areas covered in gravel and crushed stone said to exist near the eastern, western, and northern property boundaries and cover erodible surfaces. A decommissioned railroad spur runs from the northeast corner to the middle of the western boundary. Rigging and crane equipment and components such as crane sections, scaffolding, steel cables and support vehicles, are stored alon,g the northern and eastern property lines of the Facility. Truck-mounted mobile cranes, fleet trucks, and trailers are generally parked in the central portion of the Facility. Outdoor maintenance of rigging and crane equipment and components is generally conducted in the northwest portion of the property. These industrial activities create and release dust, debris, metals, and other pollutants that are discharged with storm water flows to the Receiving Waters.

Potential pollutants at the Facility include diesel fuel from fueling, leaks and spills, oil and grease; dust and dirt from equipment, vehicles and other industrial activities at the Facility, including equipment and vehicle maintenance; metallic dusts and debris from industrial activities including vehicles traffic, and equipment staging and storage; dust, debris and lubricants from industrial equipment maintenance, repair, storage and setup; and dust, debris, metallic sediment and oil and grease from other industrial activities throughout the site.

Pursuant to the Facility SWPPP dated October 19, 2015, the Facility is divided into four drainage areas. The December 2018 ERA Level 1 Report suggests that the Facility is only divided into two drainage areas: 1) the southern-most area which includes a parking area and building roof drainage and is identified as drainage area 1; and 2) the remainder of the central, north and northeastern areas of the Facility, identified as drainage area 2. Under the SWPPP, storm water is discharged from each of the four drainage areas, but only one of the drainage areas (#2) is sampled, in two places, for industrial storm water under the General Permit. Drainage area 1 is claimed to be non-industrial though the maintenance/office building is located in drainage area



1, and storm water from the roof is discharged from this drainage area. Pollutants associated from industrial activities likely collect on the roof through building cooling and ventilation. Open doors and windows are also prone to pollutant track-out from equipment and vehicle maintenance activity. Those pollutants tracked out from the building are later entrained in storm water and discharged to the Receiving Waters. The rationale for not sampling discharge from the other two drainage areas identified in the SWPPP is unknown to CSPA.

The four drainage areas are described in the SWPPP as follows: 1) the southern section of the Facility which contains the maintenance/office building and a parking area with two drain inlets; 2) The central, east, and northeastern areas which is considered a combined drainage area; 3) the center-west portion of the Facility bordered by the railroad spur line and the western property line; and 4) the far west area of the flag lot adjacent to Goodrick Avenue.

The SWPPP notes the following storm water discharge points at the Facility: 1) two storm drain inlets in the southern portion of the Facility which presumably connect to the municipal storm drain system; 2) two storm drain inlets in the central section, one to the east and the other to the north which also presumably connect to the municipal storm drain system; 3) at the central-west boundary of the site via surface flow originating from the railroad spur line; and 4) surface/sheet flow onto Goodrick Avenue at the western most portion of the Facility. Storm water from each of these discharge points flows into San Pablo Bay.

Storm water run-on from Parr Boulevard is said to enter the Facility property at the southern border of the site where three storm drain inlets on the property  and collects and discharges the run-on which is discharged to a drainage ditch in the southwest corner of the property. The SWPPP states that the run-on storm water does not contact with any industrial activities and is not sampled.

The two sampling points are identified in the Facility SWPPP as Parr and Goodrick, both in drainage area #2. The Parr sampling point is to the south of the railroad spur line near the eastern edge of the Facility. Sampling point Goodrick is in the center of the northern border of the Facility.

## II.    Bragg's Violations of the Act and the General Permit

Based on its review of available public documents, CSPA is informed and believes that Bragg is in ongoing violation of both the substantive and procedural requirements of the CWA, and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the CWA, Bragg is subject to penalties for violations of the Act since October 16, 2015. CSPA expects to identify additional storm water discharges conveying pollutants to the Receiving Waters in violation of the CWA



through further investigation of the Facility and as this matter progresses through the rainy season.

### A. Bragg Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations

Bragg's storm water sampling results provide conclusive evidence of its failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations. Self-monitoring reports under the General Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

### 1. Applicable Water Quality Standards

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Board's Basin Plan or statewide water quality control plans and policies. General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id.*

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions. Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc., 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015) CTR establishes numeric receiving water limits for toxic pollutants in California surface waters. 40 C.F.R. § 131.38. The CTR establishes a numeric limit for at least one of the pollutants thought to be discharged by Bragg: Zinc—0.12 mg/L (maximum concentration).

The *Water Quality Control Plan for the San Francisco Bay Basin* ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Messer's storm



water discharges. The Basin Plan identifies existing and potential Beneficial Uses for water bodies in the San Francisco Bay Area, such as the San Francisco Bay, Central and Richmond Inner Harbor, such as contact and non-contact water recreation, wildlife habitat, estuarian habitat, spawning, and shell fish harvesting (Basin Plan, Table 2-1.)

As noted above, the San Francisco Bay, Central is impaired for chlordane, DDT, dieldrin, mercury, PCBs, selenium, dioxin compounds, furan compounds, and trash. The San Francisco Bay is a crucial California ecological resource.

## 2.    Applicable Effluent Limitations

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F.Supp.2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Bragg: total suspended solids—100 mg/L; copper—0.0123 mg/L; zinc—0.117 mg/L, oil & grease—15 mg/L; iron—1 mg/L; and pH—6-9 s.u,. The Basin Plan's Water Quality Standards require a narrower pH range of 7.0—8.5 pH units (Basin Plan).

## 3.    Bragg's Storm Water Sample Results

As detailed above, Bragg's SWPPP describes at least four discharge points, with two sampling points. Storm water discharged from the Facility points, either flows into the municipal storm drain system or sheet flows to San Pablo Bay part of the greater San Francisco Bay. San Pablo Bay and San Francisco Bay are waters of the United States.

Except as provided in Section XI.C.4 of the 2015 Permit, samples shall be collected from each drainage area at all discharge locations. The samples must be: a) Representative of storm water associated with industrial activities and any commingled authorized non-storm water discharges; or, b) Associated with the discharge of contained storm water. At this time, CSPA is unable to determine if the two sampling points, Parr and Goodrick collect storm water representative of industrial storm water at

CWA Notice of Intent to Sue
Bragg Investment Company, Inc.
October 16, 2020
Page 9 of 17



the Facility, but notes that following review of publicly available materials, storm water from the maintenance/office building and certain outdoor maintenance areas does not appear to be sampled and analyzed.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations, and effluent limitations of the Permit.

**a.   Discharges of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 3/21/2017 | Parr | TSS | 140 | 100 |
| 3/1/2018 | Parr | TSS | 200 | 100 |
| 11/16/2017 | Parr | TSS | 230 | 100 |
| 1/8/2018 | Goodrick | TSS | 120 | 100 |
| 1/8/2018 | Parr | TSS | 480 | 100 |
| 3/13/2018 | Parr | TSS | 170 | 100 |
| 3/13/2018 | Goodrick | TSS | 110 | 100 |
| 1/16/2019 | Parr | TSS | 160 | 100 |
| 11/21/2018 | Goodrick | TSS | 130 | 100 |
| 2/26/2019 | Parr | TSS | 400 | 100 |
| 1/16/2020 | Parr | TSS | 120 | 100 |

**b.   Discharges of Storm Water Containing pH levels at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Result | EPA Benchmark Value (s.u.) | Basin Plan Value (s.u.) |
|---|---|---|---|---|---|
| 2/8/2017 | Goodrick | pH | 6.1 | 6.0-9.0 | 6.5-8.5 |
| 2/8/2017 | Parr | pH | 6.1 | 6.0-9.0 | 6.5-8.5 |
| 3/1/2018 | Parr | pH | 4.8 | 6.0-9.0 | 6.5-8.5 |
| 1/8/2018 | Parr | pH | 4.9 | 6.0-9.0 | 6.5-8.5 |
| 3/13/2018 | Parr | pH | 5.9 | 6.0-9.0 | 6.5-8.5 |
| 1/16/2019 | TBD[3] | pH | 6.4 | 6.0-9.0 | 6.5-8.5 |
| 2/26/2019 | Parr | pH | 6.3 | 6.0-9.0 | 6.5-8.5 |

[3] To be determined. The information was not readily available on State Board's Storm Water Multiple Application and Report Tracking System

CWA Notice of Intent to Sue
Bragg Investment Company, Inc.
October 16, 2020
Page 10 of 17



### c.   Discharges of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Value

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 10/14/2016 | SWD-4 | Fe | 3.2 | 1 |
| 10/14/2016 | Parr | Fe | 3 | 1 |
| 10/14/2016 | Goodrick | Fe | 4.6 | 1 |
| 10/14/2016 | SWD-2 | Fe | 2.8 | 1 |
| 10/14/2016 | SWD-1 | Fe | 3.3 | 1 |
| 3/1/2018 | Goodrick | Fe | 5.5 | 1 |
| 2/26/2019 | Parr | Fe | 7.2 | 1 |
| 11/21/2018 | Parr | Fe | 6.5 | 1 |
| 12/8/2016 | Parr | Fe | 1.2 | 1 |
| 1/16/2020 | Goodrick | Fe | 1.8 | 1 |
| 3/13/2018 | Parr | Fe | 5.7 | 1 |
| 11/21/2018 | Goodrick Effluent | Fe | 7.1 | 1 |
| 1/8/2018 | Goodrick | Fe | 1.5 | 1 |
| 2/26/2019 | Goodrick | Fe | 1.7 | 1 |
| 11/16/2017 | Goodrick | Fe | 1.6 | 1 |
| 11/21/2018 | Goodrick | Fe | 14 | 1 |
| 1/16/2019 | Goodrick | Fe | 1.1 | 1 |
| 1/8/2018 | Parr | Fe | 4.9 | 1 |
| 11/16/2017 | Parr | Fe | 13 | 1 |
| 3/1/2018 | Parr | Fe | 8.4 | 1 |
| 1/16/2020 | Parr | Fe | 6.4 | 1 |
| 3/21/2017 | Goodrick | Fe | 4.6 | 1 |
| 3/13/2018 | Goodrick | Fe | 6.4 | 1 |
| 2/8/2017 | Parr | Fe | 2.9 | 1 |
| 3/21/2017 | Parr | Fe | 2.9 | 1 |
| 1/16/2019 | Parr | Fe | 7.5 | 1 |
| 12/21/2015 | Parr | Fe | 5.4 | 1 |
| 12/21/2015 | Goodrick | Fe | 13 | 1 |
| 12/03/2015 | Parr | Fe | 7.8 | 1 |
| 12/03/2015 | Goodrick | Fe | 5.5 | 1 |



Bragg's sample results demonstrate violations of the General Permit's discharge prohibitions, receiving water limitations, and effluent limitations set forth above. CSPA is informed and believes that the Bragg has known that its storm water contains pollutants at levels exceeding General Permit standards since at least October 16, 2015. Total suspended solids have been analyzed at four times NAL twice, while iron has been recorded at 13 and 8 times the NAL with other sampled over 5, 6 and 7 times the NAL. pH has been recorded outside the instantaneous NAL range three times over the last three reporting years.

CSPA alleges that such violations occur each time storm water or non-storm water discharges from the Facility. Attachment A hereto, sets forth the specific rain dates on which CSPA alleges that Bragg has discharged storm water containing impermissible levels of total suspended solids, iron zinc, and pH, in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

Because Bragg recorded averages of testing above the NALs iron in 2015-2016 reporting year, the Facility entered ERA Level 1 for that constituents, but a Level 1 ERA report was not submitted to the submitted to the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS"). In the 2016-2017 reporting year, the Facility was again over the NAL for iron but again no ERA report is available on SMARTS. In the 2017-2018 reporting year the Facility self-reported averages above the NAL for total suspected solids and iron and a Level 1 ERA report was submitted for those constituents; however the Facility should have been entering its third year in the exceedance response program for iron. here the Facility has remained at Level 2 in the subsequent reporting years. In the 2018-2019 reporting year, the Facility entered Level ERA for total suspended solids and remained in Level 2 ERA for iron with averages well over the NAL for each constituent, but again no ERA report was submitted to SMARTS and no additional BMPs appear to have been implemented. The SWPPP remains unchanged without any apparent updates since In the 2019-2020 reporting year the Facility only sampled one rain even in January of 2020, and iron averaged over the NAL at 4.1 mg/L.

Over the past five reporting years, the Owners/Operators only sampled four rain events twice, in the 2016-2017 and 2017-2018 reporting years. In the 2015-2016 reporting year, the Facility sampled storm water twice. In the 2018-2019 reporting year, the Facility sampled and analyzed storm water three times and in the 2019-2020 reporting year only a single storm water sample was collected and analyzed. This despite ample rain events in each of the reporting years. *See* Attachment A.

### 4.    Bragg Has Failed to Implement BAT and BCT

Dischargers must implement adequate BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of



pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections X.H.1-2. Sampling results of orders of magnitude in excess of benchmark levels, as reported by Bragg, are evidence that Bragg does not have BMPs that achieve BAT/BCT (*Santa Monica Baykeeper v. Kramer Metals, Inc.* 619 F. Supp. 2d 914. 925 (C.D. Cal., 2009.)

Bragg has failed to implement the minimum BMPs required by the General Permit, including good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. General Permit, Sections X.H.1(a–g).

Bragg has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. General Permit, Sections X.H.2. There are no advanced BMPs currently in use at the Facility. The Facility SWPPP references canopy cover in part of the crane maintenance area, but no other BMPs. The 2018 ERA Report does not require implementation of any further BMPs despite repeated poor pollutant control on site and ongoing ERA status for iron, continuing issues with total suspended solids, and pH concerns.

Each day the Owners/Operators have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the CWA (33 U.S.C. § 1311(a)). The violations described above were at all times in violation of Section X of the General Permit. Accordingly, the Owners/Operators have been in violation of the BAT and BCT requirements at the Facility every day since at least October 16, 2015.

### 5.  Bragg Has Failed to Develop and Implement an Adequate Storm Water Pollution Plan

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance



evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise the Facility's SWPPP whenever necessary, and certify and submit SMARTS their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B. The Facility SWPPP was last updated in 2015, in violation of the General Permit given the subsequent NAL exceedances and status in the ERA program, with only a single ERA Report submitted that did not include sufficient BMP upgrades to achieve compliance with the General Permit.

CSPA's investigation indicates that Bragg has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements since at least October 16, 2015. Bragg has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's unlawful effluent limitation violations. The Facility's 2015 SWPPP and only ERA Report from 2018 list no substantive advanced BMPs despite the Facility's multiple years in Level 2 for iron and issues with total suspended solids.

Last, the General Permit requires a permittee whose discharges violate the General Permit's Receiving Water Limitations to implement additional BMPs or other control measures, in order to attain compliance with the receiving water limitation identifying what additional BMPs will be implemented to achieve water quality standards, along with an implementation schedule. General Permit Section I.E, which would then be incorporated into the Facility SWPPP. Information available to CSPA indicates that the Facility Owners/Operators failed to implement any additional BMPs as required by the General Permit. As such, the Owners and/or Operators are in daily violation of this requirement of the General Permit.

Each day the Owners/Operators failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. The Owners/Operators have been in violation of these requirements at the Facility every day since at least October 16, 2015.

### 6. Bragg has Failed to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program

Section X.I of the General Permit requires Facility Owners/Operators to develop and implement a Monitoring Implementation Plan ("MIP"). The primary objective of the monitoring and reporting requirements is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See*



General Permit Fact Sheet, Section II.J(1). Monitoring undertaken must therefore determine whether pollutants are being discharged, and whether response actions are necessary, and must evaluate the effectiveness of BMPs. *See* General Permit, Section I.J(56).

Section XI.A of the General Permit, requires dischargers to visually observe and collect samples of storm water from all locations where storm water is discharged. Under XI.B of the General Permit, the Facility Owners/Operators are required to collect at least two (2) samples from each discharge location at their Facility during the first half of the reporting year, and then again during the second half of the reporting year. Storm water samples must be analyzed for total suspended solids, pH, oil & gas, and other pollutants that are likely to be present in the Facility's discharges in significant quantities, and as required under the General Permit pursuant to a Facility SIC Code. *See* General Permit, Section XI.B(6). As detailed above the Facility has a lengthy history of insufficient sampling and reporting, in violation of the General Permit.

The Facility Owners'/Operators' failure to conduct sampling and monitoring as required by the General Permit demonstrates that it has failed to develop, implement, and/or revise an MIP that complies with the requirements of Section XI of the General Permit. Every day that the Facility Owners/Operators conduct operations in violation of the specific monitoring requirements of the General Permit, or with an inadequately developed and/or implemented MIP, is a separate and distinct violation of the General Permit, and the Clean Water Act. The Facility Owners/Operators have been in daily and continuous violation of the General Permit's MIP requirements every day since at least October 16, 2015. These violations are ongoing, and CSPA will include additional violations when information becomes available, including specifically continuing violations of the General Permit monitoring requirements (*see* General Permit, Section XI.). The Facility Owners/Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 16, 2015.

## 7.   Failure to Comply with the Storm Water Permit's Reporting Requirements

Section XVI of the General Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. Section XVI of the Permit requires that the Annual Report include a compliance checklist that indicates that a discharger complies with and has addressed all applicable requirements of the Permit, an affirmation of visual observations and sampling results, an identification and explanation of any non-compliance, an identification of all revisions made to the SWPPP, within the reporting year, and the date of the Annual Evaluation. General Permit Section XVI. Laboratory reports of sample analysis, the annual comprehensive site compliance evaluation report, an explanation of why a permittee did not implement any activities required are also reporting requirements throughout the reporting year and our typically uploaded into the SMARTS portal.



The Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as, NALs, TMDLs, TNALs, and NELs to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation. A Discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Actions in Section XX.B of the Permit and report to the Regional Board regarding same. See General Permit Section XX.B. Information available to CSPA indicates that the Facility Owners/Operators have failed to accurately report their non-compliance with the General Permit and correctly report storm water sampling analysis compliance in the Facility's Annual Reports. In fact, no Annual Report is available on SMARTS for the 2018-2019 reporting year, in violation of the General Permit. Further, the Facility ERA Report resulting from samples recorded in the 2016-2017 and 2017-2018 reporting years were insufficient, as evidenced by subsequent storm water sampling results. As such, the Owners/Operators are in daily violation of the General Permit. Every day the Facility Owners/Operators conduct operations at the Facility without reporting as required by the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The Facility Owners/Operators have been in daily and continuous violation of the General Permit's reporting requirements every day since at least October 16, 2015. These violations are ongoing, and CSPA will include additional violations when information becomes available, including specifically violations of the General Permit reporting requirements (*see* General Permit, Section XVI.). The Facility Owners/Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 16, 2015.

## III.     Persons Responsible for the Violations

CSPA puts Bragg on notice that it is the entity responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Bragg on formal notice that it intends to include those persons in this action.

## IV.     Name and Address of Noticing Party

The name, mailing address, and telephone number of the noticing party is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Ave,
Stockton, CA 95204
(209) 464-5067
www.calsport.org

CWA Notice of Intent to Sue
Bragg Investment Company, Inc.
October 16, 2020
Page 16 of 17



## V. Counsel

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

Anthony M. Barnes
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, CA 94609
(917) 371-8293
amb@atalawgroup.com

## VI. Conclusion

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Bragg and its agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next twenty (20) days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Anthony M. Barnes
ATA Law Group
Counsel for California Sportfishing
Protection Alliance

CWA Notice of Intent to Sue
Bragg Investment Company, Inc.
October 16, 2020
Page 17 of 17



## <u>SERVICE LIST</u>

*VIA US MAIL*

William Barr
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

John Busterud
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Andrew Wheeler
Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460 (1101A)

Michael Montgomery
Executive Officer
San Francisco Regional Water Quality
Control Board
1515 Clay St.
Suite 1400
Oakland, CA 94612

Eileen Sobeck
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Attachment A: Days With over 0.1 Precipitation, Richmond, CA

| STATION | NAME | DATE | PRCP |
|---|---|---|---|
| USC00047414 | RICHMOND, CA US | 11/2/2015 | 0.51 |
| USC00047414 | RICHMOND, CA US | 11/9/2015 | 0.57 |
| USC00047414 | RICHMOND, CA US | 11/15/2015 | 0.3 |
| USC00047414 | RICHMOND, CA US | 11/24/2015 | 0.14 |
| USC00047414 | RICHMOND, CA US | 12/3/2015 | 0.31 |
| USC00047414 | RICHMOND, CA US | 12/10/2015 | 0.25 |
| USC00047414 | RICHMOND, CA US | 12/13/2015 | 1.45 |
| USC00047414 | RICHMOND, CA US | 12/19/2015 | 0.45 |
| USC00047414 | RICHMOND, CA US | 12/21/2015 | 1.9 |
| USC00047414 | RICHMOND, CA US | 12/22/2015 | 0.25 |
| USC00047414 | RICHMOND, CA US | 12/24/2015 | 0.19 |
| USC00047414 | RICHMOND, CA US | 1/4/2016 | 0.16 |
| USC00047414 | RICHMOND, CA US | 1/5/2016 | 1.3 |
| USC00047414 | RICHMOND, CA US | 1/6/2016 | 1.27 |
| USC00047414 | RICHMOND, CA US | 1/7/2016 | 0.4 |
| USC00047414 | RICHMOND, CA US | 1/9/2016 | 0.14 |
| USC00047414 | RICHMOND, CA US | 1/13/2016 | 0.6 |
| USC00047414 | RICHMOND, CA US | 1/14/2016 | 0.17 |
| USC00047414 | RICHMOND, CA US | 1/15/2016 | 0.24 |
| USC00047414 | RICHMOND, CA US | 1/16/2016 | 0.58 |
| USC00047414 | RICHMOND, CA US | 1/17/2016 | 0.2 |
| USC00047414 | RICHMOND, CA US | 1/18/2016 | 1.4 |
| USC00047414 | RICHMOND, CA US | 1/19/2016 | 1.52 |
| USC00047414 | RICHMOND, CA US | 1/22/2016 | 0.24 |
| USC00047414 | RICHMOND, CA US | 1/23/2016 | 0.33 |
| USC00047414 | RICHMOND, CA US | 1/29/2016 | 0.3 |
| USC00047414 | RICHMOND, CA US | 1/30/2016 | 0.2 |
| USC00047414 | RICHMOND, CA US | 2/18/2016 | 0.44 |
| USC00047414 | RICHMOND, CA US | 2/19/2016 | 0.6 |
| USC00047414 | RICHMOND, CA US | 3/5/2016 | 1.27 |
| USC00047414 | RICHMOND, CA US | 3/6/2016 | 1.69 |
| USC00047414 | RICHMOND, CA US | 3/7/2016 | 0.83 |
| USC00047414 | RICHMOND, CA US | 3/9/2016 | 0.16 |
| USC00047414 | RICHMOND, CA US | 3/10/2016 | 1.08 |
| USC00047414 | RICHMOND, CA US | 3/11/2016 | 0.97 |
| USC00047414 | RICHMOND, CA US | 3/12/2016 | 0.5 |
| USC00047414 | RICHMOND, CA US | 3/13/2016 | 1.56 |
| USC00047414 | RICHMOND, CA US | 3/14/2016 | 0.16 |
| USC00047414 | RICHMOND, CA US | 4/9/2016 | 0.94 |
| USC00047414 | RICHMOND, CA US | 4/10/2016 | 0.28 |
| USC00047414 | RICHMOND, CA US | 4/22/2016 | 0.2 |
| USC00047414 | RICHMOND, CA US | 10/14/2016 | 0.36 |
| USC00047414 | RICHMOND, CA US | 10/18/2016 | 0.56 |
| USC00047414 | RICHMOND, CA US | 10/25/2016 | 0.13 |
| USC00047414 | RICHMOND, CA US | 10/28/2016 | 0.77 |
| USC00047414 | RICHMOND, CA US | 10/30/2016 | 0.41 |

| USC00047414 | RICHMOND, CA US | 11/1/2016 | 0.16 |
| USC00047414 | RICHMOND, CA US | 11/19/2016 | 0.4 |
| USC00047414 | RICHMOND, CA US | 11/20/2016 | 0.56 |
| USC00047414 | RICHMOND, CA US | 11/23/2016 | 0.41 |
| USC00047414 | RICHMOND, CA US | 11/26/2016 | 0.33 |
| USC00047414 | RICHMOND, CA US | 11/27/2016 | 0.16 |
| USC00047414 | RICHMOND, CA US | 12/8/2016 | 1.21 |
| USC00047414 | RICHMOND, CA US | 12/9/2016 | 0.2 |
| USC00047414 | RICHMOND, CA US | 12/10/2016 | 0.81 |
| USC00047414 | RICHMOND, CA US | 12/14/2016 | 0.13 |
| USC00047414 | RICHMOND, CA US | 12/15/2016 | 2 |
| USC00047414 | RICHMOND, CA US | 12/16/2016 | 0.63 |
| USC00047414 | RICHMOND, CA US | 12/23/2016 | 0.92 |
| USC00047414 | RICHMOND, CA US | 1/3/2017 | 0.5 |
| USC00047414 | RICHMOND, CA US | 1/4/2017 | 0.7 |
| USC00047414 | RICHMOND, CA US | 1/5/2017 | 0.23 |
| USC00047414 | RICHMOND, CA US | 1/7/2017 | 0.55 |
| USC00047414 | RICHMOND, CA US | 1/8/2017 | 1.6 |
| USC00047414 | RICHMOND, CA US | 1/9/2017 | 0.58 |
| USC00047414 | RICHMOND, CA US | 1/10/2017 | 1.85 |
| USC00047414 | RICHMOND, CA US | 1/11/2017 | 1.05 |
| USC00047414 | RICHMOND, CA US | 1/12/2017 | 0.41 |
| USC00047414 | RICHMOND, CA US | 1/18/2017 | 0.63 |
| USC00047414 | RICHMOND, CA US | 1/19/2017 | 0.57 |
| USC00047414 | RICHMOND, CA US | 1/20/2017 | 0.92 |
| USC00047414 | RICHMOND, CA US | 1/22/2017 | 1.7 |
| USC00047414 | RICHMOND, CA US | 1/23/2017 | 0.25 |
| USC00047414 | RICHMOND, CA US | 2/2/2017 | 0.38 |
| USC00047414 | RICHMOND, CA US | 2/3/2017 | 0.63 |
| USC00047414 | RICHMOND, CA US | 2/4/2017 | 0.55 |
| USC00047414 | RICHMOND, CA US | 2/6/2017 | 0.5 |
| USC00047414 | RICHMOND, CA US | 2/7/2017 | 2.42 |
| USC00047414 | RICHMOND, CA US | 2/8/2017 | 0.79 |
| USC00047414 | RICHMOND, CA US | 2/9/2017 | 0.93 |
| USC00047414 | RICHMOND, CA US | 2/16/2017 | 0.52 |
| USC00047414 | RICHMOND, CA US | 2/17/2017 | 0.68 |
| USC00047414 | RICHMOND, CA US | 2/18/2017 | 0.44 |
| USC00047414 | RICHMOND, CA US | 2/19/2017 | 0.18 |
| USC00047414 | RICHMOND, CA US | 2/20/2017 | 1.3 |
| USC00047414 | RICHMOND, CA US | 2/21/2017 | 1.08 |
| USC00047414 | RICHMOND, CA US | 3/5/2017 | 0.58 |
| USC00047414 | RICHMOND, CA US | 3/6/2017 | 0.48 |
| USC00047414 | RICHMOND, CA US | 3/21/2017 | 1.25 |
| USC00047414 | RICHMOND, CA US | 3/22/2017 | 0.37 |
| USC00047414 | RICHMOND, CA US | 3/24/2017 | 0.72 |
| USC00047414 | RICHMOND, CA US | 4/6/2017 | 0.85 |
| USC00047414 | RICHMOND, CA US | 4/7/2017 | 0.25 |

| USC00047414 | RICHMOND, CA US | 4/8/2017 | 0.3 |
| USC00047414 | RICHMOND, CA US | 4/12/2017 | 0.13 |
| USC00047414 | RICHMOND, CA US | 4/13/2017 | 0.38 |
| USC00047414 | RICHMOND, CA US | 4/16/2017 | 0.2 |
| USC00047414 | RICHMOND, CA US | 4/17/2017 | 0.64 |
| USC00047414 | RICHMOND, CA US | 4/18/2017 | 0.15 |
| USC00047414 | RICHMOND, CA US | 4/20/2017 | 0.9 |
| USC00047414 | RICHMOND, CA US | 11/9/2017 | 0.24 |
| USC00047414 | RICHMOND, CA US | 11/10/2017 | 0.27 |
| USC00047414 | RICHMOND, CA US | 11/16/2017 | 1.73 |
| USC00047414 | RICHMOND, CA US | 11/26/2017 | 0.37 |
| USC00047414 | RICHMOND, CA US | 11/27/2017 | 0.21 |
| USC00047414 | RICHMOND, CA US | 1/5/2018 | 0.35 |
| USC00047414 | RICHMOND, CA US | 1/6/2018 | 0.25 |
| USC00047414 | RICHMOND, CA US | 1/8/2018 | 1.9 |
| USC00047414 | RICHMOND, CA US | 1/9/2018 | 1.3 |
| USC00047414 | RICHMOND, CA US | 1/18/2018 | 0.11 |
| USC00047414 | RICHMOND, CA US | 1/19/2018 | 0.18 |
| USC00047414 | RICHMOND, CA US | 1/22/2018 | 0.58 |
| USC00047414 | RICHMOND, CA US | 1/27/2018 | 0.32 |
| USC00047414 | RICHMOND, CA US | 1/28/2018 | 0.14 |
| USC00047414 | RICHMOND, CA US | 3/1/2018 | 1.48 |
| USC00047414 | RICHMOND, CA US | 3/2/2018 | 0.27 |
| USC00047414 | RICHMOND, CA US | 3/3/2018 | 0.5 |
| USC00047414 | RICHMOND, CA US | 3/13/2018 | 0.38 |
| USC00047414 | RICHMOND, CA US | 3/14/2018 | 0.14 |
| USC00047414 | RICHMOND, CA US | 3/15/2018 | 1.6 |
| USC00047414 | RICHMOND, CA US | 3/16/2018 | 1.5 |
| USC00047414 | RICHMOND, CA US | 3/18/2018 | 0.13 |
| USC00047414 | RICHMOND, CA US | 3/20/2018 | 0.16 |
| USC00047414 | RICHMOND, CA US | 3/21/2018 | 1.22 |
| USC00047414 | RICHMOND, CA US | 3/22/2018 | 0.58 |
| USC00047414 | RICHMOND, CA US | 3/24/2018 | 0.34 |
| USC00047414 | RICHMOND, CA US | 4/6/2018 | 1.5 |
| USC00047414 | RICHMOND, CA US | 4/7/2018 | 1.05 |
| USC00047414 | RICHMOND, CA US | 4/12/2018 | 0.21 |
| USC00047414 | RICHMOND, CA US | 4/15/2018 | 0.25 |
| USC00047414 | RICHMOND, CA US | 11/21/2018 | 1.1 |
| USC00047414 | RICHMOND, CA US | 11/22/2018 | 0.11 |
| USC00047414 | RICHMOND, CA US | 11/23/2018 | 0.99 |
| USC00047414 | RICHMOND, CA US | 11/24/2018 | 0.8 |
| USC00047414 | RICHMOND, CA US | 11/27/2018 | 0.15 |
| USC00047414 | RICHMOND, CA US | 11/29/2018 | 1.16 |
| USC00047414 | RICHMOND, CA US | 12/1/2018 | 0.34 |
| USC00047414 | RICHMOND, CA US | 12/5/2018 | 0.38 |
| USC00047414 | RICHMOND, CA US | 12/14/2018 | 0.23 |
| USC00047414 | RICHMOND, CA US | 12/17/2018 | 0.54 |

| USC00047414 | RICHMOND, CA US | 12/21/2018 | 0.2 |
| USC00047414 | RICHMOND, CA US | 12/24/2018 | 0.37 |
| USC00047414 | RICHMOND, CA US | 12/25/2018 | 0.15 |
| USC00047414 | RICHMOND, CA US | 1/5/2019 | 0.37 |
| USC00047414 | RICHMOND, CA US | 1/6/2019 | 1.24 |
| USC00047414 | RICHMOND, CA US | 1/7/2019 | 0.8 |
| USC00047414 | RICHMOND, CA US | 1/9/2019 | 0.21 |
| USC00047414 | RICHMOND, CA US | 1/12/2019 | 0.25 |
| USC00047414 | RICHMOND, CA US | 1/15/2019 | 0.45 |
| USC00047414 | RICHMOND, CA US | 1/16/2019 | 1.13 |
| USC00047414 | RICHMOND, CA US | 1/17/2019 | 1.06 |
| USC00047414 | RICHMOND, CA US | 1/20/2019 | 0.12 |
| USC00047414 | RICHMOND, CA US | 1/21/2019 | 0.11 |
| USC00047414 | RICHMOND, CA US | 1/31/2019 | 0.16 |
| USC00047414 | RICHMOND, CA US | 2/2/2019 | 0.85 |
| USC00047414 | RICHMOND, CA US | 2/3/2019 | 0.45 |
| USC00047414 | RICHMOND, CA US | 2/4/2019 | 0.35 |
| USC00047414 | RICHMOND, CA US | 2/5/2019 | 0.24 |
| USC00047414 | RICHMOND, CA US | 2/8/2019 | 0.19 |
| USC00047414 | RICHMOND, CA US | 2/9/2019 | 0.45 |
| USC00047414 | RICHMOND, CA US | 2/10/2019 | 0.27 |
| USC00047414 | RICHMOND, CA US | 2/12/2019 | 0.27 |
| USC00047414 | RICHMOND, CA US | 2/13/2019 | 2.85 |
| USC00047414 | RICHMOND, CA US | 2/14/2019 | 2.49 |
| USC00047414 | RICHMOND, CA US | 2/15/2019 | 0.22 |
| USC00047414 | RICHMOND, CA US | 2/16/2019 | 0.23 |
| USC00047414 | RICHMOND, CA US | 2/25/2019 | 0.15 |
| USC00047414 | RICHMOND, CA US | 2/26/2019 | 1.37 |
| USC00047414 | RICHMOND, CA US | 2/27/2019 | 1.15 |
| USC00047414 | RICHMOND, CA US | 3/2/2019 | 0.7 |
| USC00047414 | RICHMOND, CA US | 3/5/2019 | 0.13 |
| USC00047414 | RICHMOND, CA US | 3/6/2019 | 0.9 |
| USC00047414 | RICHMOND, CA US | 3/9/2019 | 0.2 |
| USC00047414 | RICHMOND, CA US | 3/11/2019 | 0.11 |
| USC00047414 | RICHMOND, CA US | 3/20/2019 | 0.5 |
| USC00047414 | RICHMOND, CA US | 3/22/2019 | 0.24 |
| USC00047414 | RICHMOND, CA US | 3/23/2019 | 0.38 |
| USC00047414 | RICHMOND, CA US | 3/26/2019 | 0.26 |
| USC00047414 | RICHMOND, CA US | 3/27/2019 | 0.38 |
| USC00047414 | RICHMOND, CA US | 3/28/2019 | 2.7 |
| USC00047414 | RICHMOND, CA US | 4/2/2019 | 0.11 |
| USC00047414 | RICHMOND, CA US | 4/5/2019 | 0.18 |
| USC00047414 | RICHMOND, CA US | 4/16/2019 | 0.11 |
| USC00047414 | RICHMOND, CA US | 5/15/2019 | 0.22 |
| USC00047414 | RICHMOND, CA US | 5/16/2019 | 0.76 |
| USC00047414 | RICHMOND, CA US | 5/18/2019 | 0.31 |
| USC00047414 | RICHMOND, CA US | 5/19/2019 | 0.7 |

| USC00047414 | RICHMOND, CA US | 11/27/2019 | 0.85 |
| USC00047414 | RICHMOND, CA US | 12/1/2019 | 0.54 |
| USC00047414 | RICHMOND, CA US | 12/2/2019 | 0.84 |
| USC00047414 | RICHMOND, CA US | 12/4/2019 | 0.23 |
| USC00047414 | RICHMOND, CA US | 12/7/2019 | 0.5 |
| USC00047414 | RICHMOND, CA US | 12/8/2019 | 0.29 |
| USC00047414 | RICHMOND, CA US | 12/9/2019 | 0.26 |
| USC00047414 | RICHMOND, CA US | 12/11/2019 | 0.26 |
| USC00047414 | RICHMOND, CA US | 12/12/2019 | 0.25 |
| USC00047414 | RICHMOND, CA US | 12/18/2019 | 0.68 |
| USC00047414 | RICHMOND, CA US | 12/19/2019 | 0.12 |
| USC00047414 | RICHMOND, CA US | 12/22/2019 | 0.55 |
| USC00047414 | RICHMOND, CA US | 12/26/2019 | 0.25 |
| USC00047414 | RICHMOND, CA US | 12/29/2019 | 0.17 |
| USC00047414 | RICHMOND, CA US | 12/30/2019 | 0.55 |
| USC00047414 | RICHMOND, CA US | 1/9/2020 | 0.18 |
| USC00047414 | RICHMOND, CA US | 1/16/2020 | 1.6 |
| USC00047414 | RICHMOND, CA US | 1/22/2020 | 0.39 |
| USC00047414 | RICHMOND, CA US | 3/7/2020 | 0.3 |
| USC00047414 | RICHMOND, CA US | 3/14/2020 | 0.5 |
| USC00047414 | RICHMOND, CA US | 3/15/2020 | 0.32 |
| USC00047414 | RICHMOND, CA US | 3/24/2020 | 0.2 |
| USC00047414 | RICHMOND, CA US | 4/7/2020 | 0.38 |
| USC00047414 | RICHMOND, CA US | 5/12/2020 | 0.15 |