ANTHONY BARNES (Bar No. 199048)
Email: amb@atalawgroup.com
JASON FLANDERS (Bar No. 238007)
Email: jrf@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>BRAGG INVESTMENT COMPANY, INC., doing business as BRAGG CRANE SERVICE, a California corporation,<br>              Defendant. | Case No.: 4:21-cv-03675-DMR<br><br>~~[PROPOSED]~~ **CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives.

**WHEREAS**, Bragg Investment Company, Inc. ("Bragg" or "Defendant") owns and operates an industrial facility at 457 Parr Boulevard, Richmond, CA 94801 ("Facility").

**WHEREAS**, the Facility industrial activities include equipment and vehicle maintenance and storage, crane, rigging, equipment setup and staging, and fueling and fuel storage in furtherance of renting and leasing heavy construction equipment.

**WHEREAS**, CSPA alleges stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, CSPA alleges Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, and as CSPA alleges including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (5) implement a monitoring and reporting program designed to assess compliance with the Permit;

1    **WHEREAS**, on October 16, 2020, Plaintiff issued a notice of intent to file suit ("60-Day

2    Notice") to Defendant, its registered agent, the Administrator of the United States Environmental

3    Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board

4    ("State Board"), the Executive Director San Francisco Regional Water Quality Control Board

5    ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the

6    Clean Water Act and the General Permit, Water Quality Order 97-03-DWQ, and as amended by

7    Water Quality Order 2014-0057-DWQ, at the Facility;

8    **WHEREAS** stormwater quality sampling results from October 2016 to January 2021

9    revealed consistent exceedances of annual average Numeric Action Levels ("NALs") from the

10   General Permit for iron (total) and TSS at the Facility.

11   **WHEREAS**, on May 14, 2021, CSPA filed a complaint against Bragg in the Northern

12   District of California, Civil Case No. 4:21-cv-03675-DMR ("Complaint");

13   **WHEREAS**, Plaintiff's complaint alleged violations of the General Permit and CWA for

14   Defendant's discharges of pollutants into storm drains and surface waters, including the San Pablo

15   Bay and the greater San Francisco Bay, ("Receiving Waters");

16   **WHEREAS**, Defendant admits no liability with respect to each claim included within the

17   Complaint;

18   **WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that

19   it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions

20   appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without

21   further proceedings;

22   **WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be

23   made in compliance with all applicable federal, state and local rules and regulations.

24
25   **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING

     PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

26   1.      The Court has jurisdiction over the subject matter of this action pursuant to Section

27   505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

28

2.      The Parties hereby consent to Magistrate Judge jurisdiction in the United States District Court Northern District of California;

3.      Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

4.      For purposes of this Consent Decree, the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

5.      CSPA has standing to bring this action;

6.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issue raised within the two (2) year term of this Consent Decree.

I.  **OBJECTIVES**

7.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by CSPA in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, and compliance with all applicable sections of the CWA.

8.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, all applicable terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

II. **AGENCY REVIEW AND CONSENT DECREE TERM**

A.  **AGENCY REVIEW OF CONSENT DECREE**

9.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event

1  that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and

2  confer to attempt to resolve the issue(s) raised by the Federal Agencies.

3     10.   Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal

4  Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-

5  day review period.

6     11.   Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day

7  review period, Plaintiff shall submit the Consent Decree to the Court for entry.

8     **B.  EFFECTIVE DATE AND TERM OF CONSENT DECREE**

9     12.   Effective Date. The Effective Date of this Consent Decree shall be the date of entry

10  by the Court.

11     13.   Term & Termination. This Consent Decree shall terminate two (2) years from the

12  Effective Date unless:  one of the Settling Parties has invoked Dispute Resolution in accordance

13  with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the

14  earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the

15  dispute has been fully resolved or an order of the Court resolving the dispute and terminating the

16  Consent Decree.

17  III. **COMMITMENTS OF THE SETTLING PARTIES**

18     **A.  STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

19     14.   Current and Additional Best Management Practices: In addition to maintaining the

20  current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution

21  Plan ("SWPPP"), Defendant shall (1) develop and implement BMPs identified herein, and (2)

22  develop and implement additional BMPs necessary to comply with the provisions of this Consent

23  Decree and the Storm Water Permit, as applicable, including but not limited to those that achieve

24  the Best Available Technology Economically Achievable ("BAT") and the Best Conventional

25  Treatment Technology ("BCT"). In addition, the Industrial General Permit Receiving Water

26  Limitations require that discharges from the Facility "not cause or contribute to an exceedance of

27  any applicable water quality standards contained in a Statewide Water Quality Control Plan or the

28  applicable Regional Board's Basin Plan." Defendant shall to the extent applicable develop and

implement BMPs necessary to comply with the Industrial General Permit requirements, to achieve compliance with BAT/BCT standards and applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

15.     Structural and Non-Structural BMPs for the Facility: Within forty-five days of the Effective Date, Defendant shall develop and implement the following BMPs:

a. Maintenance of existing filter baskets and filtration socks. Maintenance shall include replacement of drop inlet filters and fiber rolls around all drain inlets, and is to be completed annually, prior to wet season, and inspection of units after significant storms.

b. Daily sweeping of all outdoor maintenance areas identified in red in the attached **Exhibit A**.

c. Daily cleaning of indoor areas that come in contact with forklifts or other vehicular traffic that could promote airborne transport of debris.

d. Weekly street sweeping during the rainy period starting October 1st and ending April 30th.  Such street sweeping shall be conducted with a regenerative air sweeper approved by the South Coast Air Quality Management District ("SCAQMD").

e. In the event of rain, deployment of tarps or other form of equipment/material covering over metal recycling bins, waste material in open containers/areas, and equipment that is reasonably accessible, feasible and practicable. Equipment that is not reasonably accessible, feasible and practicable for covering includes, but is not limited to, cranes and crane components.

f. Removal of abandoned/inutile materials from the Facility and consolidation of storage areas.

g. Performance of vehicle maintenance activities indoor or under cover on vehicles for which indoor or covered maintenance is reasonably feasible and practicable. Vehicles for which indoor or covered maintenance is not reasonable feasible and

practicable include, but is not limited to, cranes that exceed the capacity of the maintenance shop area.

    h.   Ensure all onsite vehicles, forklifts, and other vehicular equipment are free of leaks.

    i.   Place absorbent materials on surface below vehicle or equipment prior to performing outdoor vehicle or equipment maintenance, and take extra care to immediately contain, capture and clean up any discharge or spill of waste auto fluids.

    j.   Inspect equipment returning to Facility for oil leaks and debris. Any debris found upon inspection shall be cleaned and drip pans placed beneath any leaking equipment. Any equipment found to be leaking oil shall be tagged for immediate repair and maintenance.

    k.   Daily inspection of operation work areas.

    l.   Training of staff on proper operational procedures and control measures. Training shall take place annually or, for new employees, at or near the time of hiring.

## B. SAMPLING AT THE FACILITY

16.    Bragg shall develop a monitoring program consistent with the Industrial General Permit. During the life of this Consent Decree, Defendant shall collect samples of storm water discharge from Discharge Locations designated in the SWPPP. Defendant shall collect storm water samples from each Discharge Location from at least four (4) qualified storm events as required by the Industrial General Permit (i.e., two Qualifying Storm Events ("QSEs") during the first half of the reporting year[1] and two QSEs during the second half of the reporting year). A QSE is a storm that occurs during normal business hours and produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to CSPA by email within five (5) days of the date a sample should have been collected but was not. If, prior to March 1 of a reporting year, Bragg has collected samples from two (2) or fewer qualifying storm events, Bragg shall, to the extent feasible, collect samples during as many QSEs as necessary

---

[1] A reporting year is defined as July 1 to June 30.

1   until a minimum of 4 storm events have been sampled for the reporting year to the extent that there

2   are sufficient number of QSEs.

3       17.   <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall

4   be analyzed for the parameters listed in **Table 1**.

5       18.   <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a

6   California state certified environmental laboratory for analysis within allowable hold times,

7   pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable

8   instrument for pH in accordance with the manufacturer's instructions.

9       19.   <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods

10   adequate to detect the individual contaminants at or below the values specified in the Industrial

11   General Permit and **Table 1** below.

12       20.   <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples

13   collected at the Facility to CSPA within ten (10) days of receiving the final results.

14   **C.  REDUCTION OF POLLUTANTS IN DISCHARGES**

15       21.   **Table 1** Numeric Limits: Defendant shall develop and implement BMPs to reduce

16   pollutants in storm water at the Facility to levels below those in **Table 1**. As of the Effective Date,

17   and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an

18   exceedance of a numeric limit in **Table 1** in a single reporting year, Defendant shall comply with

19   the action plan requirement set forth below.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | EPA Benchmark |
| Oil & Grease | 15 mg/L | EPA Benchmark |
| Iron | 1 mg/L | EPA Benchmark |
| Zinc | 0.26 mg/L | EPA Benchmark |
| pH | 6.5-8.5 s.u. | Basin Plan |

22       22.   **Table 1** Exceedances are defined as follows: in any reporting year under the term

26   of this Consent Decree 1) the average of all storm water analytical results for individual pollutant(s)

27   exceeds any of the applicable benchmarks as set forth in Table 1; or 2) any storm water sample

contains a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit.

23.    Action Plan for **Table 1** Exceedances: If storm water samples demonstrate an exceedance as defined above, Defendant shall prepare and submit to CSPA a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for that Facility.

24.    If an Action Plan is required following a Reporting Year, it shall be submitted by August 31 following the previous Reporting Year that demonstrated an Exceedance.

    a.  Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify CSPA in writing when an Action Plan has been implemented.

    b.  Action Plan Review: CSPA shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving CSPA's proposed revisions to an Action Plan, Defendant shall consider each of CSPA's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**D. VISUAL OBSERVATIONS**

25.    Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at the following locations identified in the SWPPP:

a.    Two storm drain inlets in the southern portion of the Facility;

b.    Two storm drain inlets in the central section, one to the east and one to the north; and

c.    At the central-west boundary of the site via surface flow originating from the railroad spur line.

26.    <u>Non-Storm Water Discharge Observations</u>: During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

27.    <u>Visual Observations Records</u>: Defendant shall maintain observation records to document compliance with paragraphs 25 and 26 and shall provide CSPA with a copy of those records within fourteen (14) days of receipt of a written request from CSPA for those records.

28.    <u>Employee Training Program</u>: Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program");

a.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit.

b.    <u>Qualified Industrial Storm Water Practitioner</u>. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP.

c.    <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree,

9

including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

d.  Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e.  Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the Industrial General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f.  Employees: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

g.  The Defendant shall maintain training records to document compliance with this paragraph and shall provide CSPA with a copy of these records within fourteen (14) days of receipt of a written request.

h.  Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

28.  SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree.  Defendant agrees to submit the updated SWPPP and MIP to CSPA upon completion for review and comment.

a.  Review of SWPPP and/or MIP: CSPA shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving CSPA's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated;

b.    Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to CSPA's review and comment as provided in paragraph 28 (a) above.

c.    The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

### E. COMPLIANCE MONITORING AND REPORTING

29.    Every year during the life of this Consent Decree, CSPA may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the Industrial General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and CSPA will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather, provided the adjustment shall conform to the notice established in the previous sentence. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to CSPA upon CSPA's request. CSPA's representative(s) may observe the split sample(s) being collected by Defendant's

representative. CSPA shall be permitted to take photographs or video recording during any Site Inspection.

30.     Document Provision. During the term of this Consent Decree, Defendant shall notify and submit documents to CSPA as follows:

a.     Defendant shall copy CSPA on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.     Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to CSPA within three (3) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to CSPA at the relevant notice address contained below.

31.     Compliance Monitoring. Defendant shall pay $10,000 to CSPA at the time of the effective date of this Consent Decree, which amount shall cover all future costs, including without limitation the cost of reviewing such Action Plans as may be submitted and compliance monitoring. Such amount shall be made to "CSPA" addressed to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**F.  ENVIRONMENTAL MITIGATION AND LITIGATION FEES AND COSTS**

32.     Environmental Mitigation Project: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a total payment of Eleven Thousand Dollars ($11,000.00) to the Rose Foundation, to fund environmental project activities that will benefit the San Francisco Bay, made within forty-five (45) days of the Effective Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail

to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide CSPA with a copy of such payment.

33. **CSPA's Fees and Costs**: Defendant agrees to pay a total of Thirty-Four Thousand Dollars ($34,000.00) to CSPA to partially reimburse Plaintiff, within forty-five (45) days of the Effective Date, for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made payable upon the Effective Date to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

## IV. **DISPUTE RESOLUTION**

34. Unless otherwise expressly provided for in this Consent Decree, all disputes under this Consent Decree are subject to dispute resolution, and the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

35. This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36. **Meet and Confer**. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

37. **Settlement Conference**. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the

Northern District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.     In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.  **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

39.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date other than matters addressed in this Consent Decree.

42.     This Consent Decree shall not be construed to prevent or limit any rights or defenses Defendant may have to any claim, demand, or cause of action under state or federal law that is not addressed in this Consent Decree.

VI. **MISCELLANEOUS PROVISIONS**

43.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

48.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.     Choice of Law. The laws of the United States shall govern this Consent Decree.

51.    <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse

or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.   <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Anthony M. Barnes<br>Aqua Terra Aeris Law Group LLP<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609<br>amb@atalawgroup.com<br>(917) 371-8293 | Nicholas Targ<br>Holland & Knight LLP<br>50 California Street, Suite 2800<br>San Francisco, CA 94111<br>nicholas.targ@hklaw.com<br>(415) 743-6926 |
| <u>With copies to</u>:<br>Bill Jennings, Executive Director<br>California Sportfishing Protection Alliance<br>3536 Rainier Ave,<br>Stockton, CA 95204<br>(209) 983-9053 | <u>With copies to</u>:<br>Owen Kupfer, Jr.<br>Bragg Companies<br>6251 Paramount Boulevard<br>Long Beach, California 90805<br>owen.kupfer@braggcrane.com<br>(562) 984-2480 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.   If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null

[PROPOSED] CONSENT DECREE

1    and void as well as inadmissible as a settlement communication under Federal Rule of Evidence

2    408 and California Evidence Code section 1152.

3    The Parties hereto enter into this Consent Decree and submit it to the Court for its approval

4    and entry as a final judgment.

5    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

6    first set forth below.

7

8

9    APPROVED AS TO CONTENT

10

11    Dated: _____ June 3 _____, 2021    By: _____

12    Bill Jennings, Executive Director

13    California Sportfishing Alliance

14

15    Dated: _____, 2021    By: _____

16    |Owen Kupfer Jr., General Manager

17    Bragg Investment Company, Inc.

18

19    APPROVED AS TO FORM

20

21    Dated: _____ June 3 _____, 2021    By: _____

22    Anthony M. Barnes

23    Attorney for Plaintiff

24    California Sportfishing Alliance

24    Dated: _____, 2021    By: _____

25    Nicholas Targ

26    Attorney for Defendant

27    Bragg Investment Company, Inc.

28

1  and void as well as inadmissible as a settlement communication under Federal Rule of Evidence

2  408 and California Evidence Code section 1152.

3          The Parties hereto enter into this Consent Decree and submit it to the Court for its approval

4  and entry as a final judgment.

5          IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

6          IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

7  first set forth below.

8

9  APPROVED AS TO CONTENT

10

11  Dated: _____June 3_____, 2021

12                                          By: _____

13                                              Bill Jennings, Executive Director
                                                California Sportfishing Alliance

14

15  Dated: ___6-14____, 2021             By: _Owen E. Kupfer Jr.___

16                                              Owen Kupfer Jr., General Manager
                                                Bragg Investment Company, Inc.

17

18

19  APPROVED AS TO FORM

20

21  Dated: _____June 3_____, 2021   By: _____

22                                              Anthony M. Barnes
                                                Attorney for Plaintiff

23                                              California Sportfishing Alliance

24  Dated: __June 14,____, 2021          By: _____

25                                              Nicholas Targ
                                                Attorney for Defendant

26                                              Bragg Investment Company, Inc.

27

28

[PROPOSED] CONSENT DECREE

1

2

3

4 **IT IS SO ORDERED.**
**FINAL JUDGMENT**

5

6        Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

7 constitute a final judgment between the Plaintiff and Defendant.

8

9 Dated: _____August 2, 2021_____          NORTHERN DISTRICT OF CALIFORNIA

10

11

12                                              IT IS SO ORDERED

13                                              Judge Donna M. Ryu

14                                              HONORABLE DONNA M. RYU
                                                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] CONSENT DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT A

## Outdoor Maintenance Areas



20